CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 17 2007

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 7:07-PO-247 |
| v. | ) 7:07-PO-249 |
| | ) 7:07-PO-250 |
| JOSEPH R. STEPHENSON, | ) |
| Defendant. | ) |
| | ) By: Hon. Michael F. Urbanski |
| | ) United States Magistrate Judge |
| | ) |

## MEMORANDUM OPINION

Defendant Joseph R. Stephenson ("Stephenson") was charged with two violations of 36 C.F.R. § 4.23(a), driving under the influence ("DUI"), and a violation of 36 C.F.R. § 2.35(c), intoxication in a national park. A trial was held on July 5, 2007.

At trial, defendant moved for a judgment of acquittal on the intoxication in a national park charge, arguing that there was no evidence that Stephenson was a danger to himself or others as required under that regulation. Defendant also moved for a judgment of acquittal on the two DUI charges. Stephenson claimed that because he pulled his truck off the road, the engine was not running, his truck had run out of gasoline, and he was asleep, he was neither operating nor in actual physical control of his truck while under the influence of alcohol.

At the close of evidence, the court took the defendant's motions for judgment of acquittal under advisement to issue a written ruling, particularly addressing Stephenson's position that he was not in actual physical control of the vehicle. The court gave the United States until July 19, 2007 to file a brief on the issue, gave Stephenson ten (10) days thereafter to respond, and the United States ten (10) days to file any reply. Following briefing, the case is now ripe for decision.

For the reasons set forth in this Memorandum Opinion, the Court will enter an Order granting Stephenson's motion for a judgment of acquittal as to the charged DUI violations under 36 C.F.R. § 4.23(a)(1) and (2). Based on the evidence adduced at trial, however, the Court will enter an Order finding Stephenson guilty of violating 36 C.F.R. § 2.35(c), intoxication in a national park. A sentencing hearing will be set.

### I.

At approximately 3:45 p.m. on May 5, 2007, Ranger Jonathan Holter, who was patrolling the Blue Ridge Parkway in the Western District of Virginia, received a call from dispatch regarding a disabled vehicle at milepost 124 at the Buck Mountain overlook. About twenty-five minutes later, Ranger Holter and an officer-in-training, Ranger Tim Davis, pulled into the parking area of the overlook and observed a black Ford truck with its flashers on, pointed north, and parked adjacent to the parkway. Ranger Holter identified defendant Stephenson as the sole occupant of the vehicle, and testified that he was not alert and possibly asleep behind the steering wheel. The truck's keys were in the ignition, though Ranger Holter could not say whether the key was in the "on" or "off" position. The engine was not running. Ranger Holter testified that he felt the front of the truck and it felt hot, consistent with recent use of the motor.

Ranger Holter tapped on the window and woke defendant, who then removed the keys from the ignition and informed Ranger Holter that he had run out of gas. Ranger Holter testified that Stephenson informed him that he had been stopped for 30-45 minutes. As Ranger Holter spoke with Stephenson, he smelled alcohol on his breath and observed his eyes to be glassy and red. Ranger Holter observed two empty beer cans and an open bottle of liquor on ice in defendant's vehicle, and he testified that Stephenson told him that he had consumed two beers a few hours earlier.

2

As a result, Ranger Davis, under Ranger Holter's supervision, administered a series of field sobriety tests to determine whether Stephenson was impaired. Ranger Holter testified at trial that the horizontal gaze nystagmus test indicated impairment.[1] During the walk and turn test, Stephenson used his arms for balance and failed to turn as instructed. Ranger Davis was unable to administer the one leg stand test to Stephenson due to his previous hip injury; however, Ranger Holter testified that Stephenson had a positive result on a portable breath test. Because the field sobriety tests indicated impairment, Ranger Holter determined that probable cause existed to arrest Stephenson for driving under the influence.

Ranger Holter testified that he then transported Stephenson to the station for blood alcohol content ("BAC") testing using the Intoxilyzer 5000. Ranger Holter administered the breath test to defendant at 5:50 p.m., and the machine provided a BAC of 0.11 grams of alcohol per 210 liters of breath.[2]

Based on this result, Stephenson was charged with violations of 36 C.F.R. § 4.23(a)(1) and (2). The relevant sections read:

> (a) Operating or being in actual physical control of a motor vehicle is prohibited while:
>
> (1) Under the influence of alcohol, or a drug, or drugs, or any combination thereof, to a degree that renders the operator incapable of safe operation; or
>
> (2) The alcohol concentration in the operator's blood or breath is .08 grams or more of alcohol per 100 milliliters of blood or .08 grams or more of alcohol per 210 liters of breath . . . .

---

[1] In this test, the driver is asked to follow a penlight or finger with the eyes. The officer looks to see if the driver can follow the object smoothly, if jerking is distinct when the eye is at maximum deviation, and if the angle of the onset of jerking of the eyeball is within 45 degrees of center. If, between the two eyes, four or more indicators of impairment appear, the driver likely has a BAC of 0.10 or greater. http://www.horizontalgazenystagmus.com (last visited July 13, 2007).

[2] The administration of the Intoxilyzer 5000 was unchallenged at trial. Ranger Holter testified at trial that he has received specialized training in the operation of the machine and has been certified to operate the Intoxilyzer 5000.

3

36 C.F.R. § 4.23(a).

Stephenson also was charged with a violation of 36 C.F.R. § 35(c), concerning presence in a park in an intoxicated state.

In contrast to Ranger Holter's testimony, Stephenson stated at trial that he had been stopped for over an hour before Ranger Holter approached him. He testified that he could not access his beers while driving because of their position in the back of the cab, and he testified that he did not consume any beer until after he was stopped at the Buck Mountain overlook. After consuming the beer, he went to sleep. Stephenson asserted that he did not consume any of the liquor found in his cab that day. Stephenson testified that he fell asleep in his vehicle for a short time after he ran out of gas, but awoke when a passing motorist stopped and asked if he needed help. Stephenson informed her that he had run out of gas, and she told him that she would call for help. Stephenson said he then fell back asleep until Ranger Holter roused him by tapping on the window.

## II.

The language of 36 C.F.R. § 4.23(a) requires that the defendant either operate a vehicle or be in "actual physical control" while under the influence of alcohol. Under Virginia law, "operating" or being in "actual physical control" of a vehicle while intoxicated has been interpreted to constitute "initiating mechanical operations of a vehicle." Commonwealth v. McConnell, 68 Va. Cir. 471, 2005 WL 2417633, at *3 (Charlottesville, Va. Cir. Ct. Sept. 29, 2005) (citing Williams v. City of Petersburg, 216 Va. 297, 300, 217 S.E.2d 893, 896 (1975) and Gallagher v. Commonwealth, 205 Va. 666, 668-69, 139 S.E.2d 37, 39-40 (1964); see also Leake v. Commonwealth, 27 Va. App. 101, 106-7, 497 S.E.2d 522, 525-27 (1998) (affirming

4

defendant's conviction for "operating" a vehicle while intoxicated where he was found leaning into the interior compartment of his truck, which was on the road with its engine running and lights illuminated); Propst v. Commonwealth, 24 Va. App. 791, 793, 485 S.E.2d 657, 659 (1997) (holding that defendant "operated" his vehicle when it was discovered in the travel lane with its lights on, the key in the ignition, and the truck in gear, although the motor was not running); Rivers v. Commonwealth, No. 1222-92-1, 1994 WL 220365, at *1 (Va. Ct. App. May 24, 1994) (deciding that the defendant was in actual physical control of the vehicle even though he was asleep across the front seat and the motor was not running, because the keys were in the ignition turned to "on" and the transmission was in "drive"). Where the defendant does "not engage the mechanical or electrical equipment of [his] car, [the defendant] did not 'drive or operate' the car within the meaning of the statute." Stevenson v. City of Falls Church, 243 Va. 434, 438, 416 S.E.2d 435, 438 (1992).

While Virginia law is persuasive authority, "federal law preempts state law on this issue of intoxicated motor-vehicle operators within national park areas." United States v. Coleman, 750 F. Supp. 191, 193 (W.D. Va. 1990). In Coleman, the court held that "by using the phrase 'operating or being in actual physical control of a motor vehicle,' the regulation draws within its purview conduct more expansive than conduct that would be encompassed within the word 'operating.'" Id. at 194. The court reasoned that "someone who was the owner, who had her key in the ignition, and who was rhetorically and literally 'in the driver's seat'" was an "operator" under the regulation, as well as was in "actual physical control" of the vehicle, even though the engine was not running, there was no manipulation of the vehicle's machinery, and the vehicle

5

was not in motion. Id. Accordingly, under Coleman, a conviction pursuant to 36 C.F.R. § 4.23(a) does not require proof of the mechanical operation of a vehicle.[3]

In this regard, the scope of conduct which Coleman proscribes appears broader than under current Virginia state law. Two years after Coleman was decided, the Supreme Court of Virginia in Stevenson v. City of Falls Church, 243 Va. 434, 416 S.E.2d 435 (1992), considered the appeal of defendant's conviction for operating a motor vehicle while intoxicated under facts where the driver was asleep behind the wheel of his car parked in a 7-11 parking lot. The car was not running. While the key was in the ignition, the arresting officer did not recall whether the key was in the "on" or "off" position. Justice Whiting, writing the majority opinion in the 4-3 decision, reversed the conviction because there was no evidence that the ignition key was in the "on" position, reasoning as follows:

> Because the presence of the key in the ignition switch in the off position did not engage the mechanical or electrical equipment of Stevenson's car, Stevenson did not "drive or operate" the car within the meaning of the statutes that were incorporated by reference in the Falls Church ordinance.

243 Va. at 438, 416 S.E.2d at 438. Justice Compton, writing on behalf of himself and fellow dissenters, found the majority's distinction between having keys in the ignition in the "on" or

---

[3] The government did not prove beyond a reasonable doubt that Stephenson consumed alcohol before his car ran out of gas. Stephenson testified that he did not drink until after his car was disabled. While the government suggested that Stephenson's testimony was not credible based on the fact that Stephenson told the Ranger that he drank beer a few hours earlier, that testimony does not, in and of itself, meet the government's burden of proving that Stephenson operated the motor vehicle under the influence of alcohol. Further, the government places great reliance on Ranger Holter's observation that the hood of the black Ford truck was warm to the touch on the May day in question, and requests the court to take judicial notice of Ranger Holter's firefighting experience, asserting that this is "sufficient for the court to infer that Ranger Holter has knowledge sufficient to differentiate between convective and radiant heat." Government's Memorandum of Law at 18. No evidence was offered on Ranger Holter's ability to discern any difference between heat from the internal combustion engine or from nuclear fusion reactions on the sun, and the government cannot meet its burden by asking the court to make such a leap of quantum mechanics. Thus, the issue in this case devolves to whether Stephenson was in "actual physical control" of his truck while under the influence of alcohol.

6

"off" position to be without a difference, noting that "a motor vehicle can be started as readily with an ignition key in the "off" position as it can when the key is in the "on" position. 243 Va. at 440, 416 S.E.2d at 439.

Both in <u>Stevenson</u> and <u>Coleman</u>, an intoxicated person was found in the driver's seat of his parked vehicle with the keys in the ignition. In each case, there was no evidence as to the position of the key -- "on' or "off" -- in the ignition, yet the courts reached opposing conclusions. Under the federal regulatory scheme applicable here, following <u>Coleman</u> and the logic of Justice Compton's dissent in <u>Stevenson</u>, it makes little sense to draw a distinction between an ignition key in the "on" or "off" position. Under either scenario, an intoxicated person behind the wheel is plainly in actual physical control of the vehicle.[4]

Like the defendant in <u>Coleman</u>, Stephenson was behind the wheel of his vehicle, his key was in the ignition, and was intoxicated when Ranger Holter approached him. Consideration of these facts alone supports a conviction. However, the facts of this case transcend <u>Coleman</u> as Stephenson was (1) asleep, (2) the vehicle was parked in an overlook off the road with its flashers on, and (3) was inoperable as it had run out of gas. Each of these additional factors are considered in turn.

### A. **Defendant Asleep Behind the Wheel.**

The question whether an intoxicated person sleeping behind the wheel is in actual physical control of his vehicle for purposes of 36 C.F.R. § 4.23(a) was answered in <u>United States v. McFarland</u>, 445 F.3d 29, 32 (1st Cir. 2006). There the First Circuit addressed the issue of

---

[4] It is worth nothing that five years after <u>Stevenson</u> was decided, the Virginia Court of Appeals declined to read <u>Stevenson</u> as setting forth a bright line rule concerning ignition keys in the "on" or "off" position. "[N]either [the Court of Appeals] nor the Virginia Supreme Court has fashioned a bright line rule that a vehicle's motor must be

7

whether a sleeping motorist was in actual physical control of his parked vehicle for the purposes of prosecution under 36 C.F.R. § 4.23(a). McFarland was charged under this section after two Acadia National Park Rangers discovered him asleep in his vehicle, which was still warm from recent use, but which was parked in a parking lot with the keys in the ignition. Id. at 30. The court found that a preponderance of the evidence established that "at some point before he fell asleep, [the defendant] was both *drunk and awake*, sitting in front of his truck, with the key in the ignition," and accordingly, convicted him under 36 C.F.R. § 4.23(a). Id. at 32.

Applying McFarland, the fact that defendant Stephenson was asleep when he was found by Ranger Holter is insufficient, in and of itself, to defeat the charge that he was in actual physical control of his vehicle. By defendant's own admission, he awoke from his slumber prior to his exchange with Ranger Holter when a passing motorist stopped to offer him assistance. During his encounter with the passing motorist, Stephenson was indisputably awake, intoxicated, and sitting behind the wheel of his truck with the key in the ignition. The fact that Stephenson nodded off for the next twenty-five minutes until he was roused by Ranger Holter does not change the analysis.

Moreover, although decided under state law, a number of courts, including those in Virginia, have found intoxicated persons sleeping in the driver's seat to violate state DUI laws. See Williams, 216 Va. at 299, 217 S.E.2d at 895; McConnell, 2005 WL 2417633, at *3-4; State v. Lawrence, 849 S.W.2d 761, 765 (Tenn. 1993); State v. Kelley, 308 S.E.2d 720, 721 (N.C. Ct. App., 1983). The rationale for these cases is plain. Drunk drivers behind the wheel of motor

---

running or its ignition switch must be in the 'on' position for a defendant to be convicted of driving or operating a motor vehicle while intoxicated . . . ." Propst, 24 Va. App. at 793, 485 S.E.2d at 659.

vehicles, even "sleeping it off," pose a public safety menace. Williams, 216 Va. at 299, 217 S.E.2d at 895. As Justice Compton wrote in his dissent in Stevenson:

> Ordinary experience tells us that one in a drunken stupor in the driver's seat of a vehicle is likely to arouse abruptly, engage the motive power of the vehicle and roar away imperiling the lives of innocent citizens. This sequence of events easily can occur where, as here, a drunk is sitting behind the steering wheel of a motor vehicle alone, with the key already in the ignition. From a mechanical standpoint, the vehicle is "capable of being immediately placed in motion to become a menace to the public, and to its drunken operator."

Stevenson, 243 Va. at 440, 416 S.E.2d at 439 (quoting Williams, 216 Va. at 301, 217 S.E.2d at 896).

While Stephenson cites precedent from other states finding sleeping intoxicated persons not to violate those states' DUI laws, none of those cases stand for the proposition that a person behind the steering wheel with the key in the ignition or motor running was not in actual physical control of a motor vehicle simply because that person was sleeping. Therefore, even though he was asleep, the fact that Stephenson was behind the wheel of his truck with the keys in the ignition while intoxicated supports a conviction under 36 C.F.R. § 4.23(a).

### B. Vehicle Located in Parkway Overlook.

Stephenson claims his truck coasted to a stop at the Buck Mountain overlook, where it remained until he was contacted by the passing motorist and later Ranger Holter. Several courts have considered whether a driver can be found to operate or be in control of a parked motor vehicle. See State v. Love, 897 P.2d 626, 628-30 (Ariz. 1995) (adopting a "totality of the circumstances" test with one of the factors being "where the vehicle was stopped (in the road or legally parked)"); Atkinson v. State, 627 A.2d 1019, 1027 (Md. 1993) (stating "whether the vehicle is located in the roadway or is legally parked" is one of six factors to consider whether a

9

driver is in "actual physical control"). Many of these courts have upheld DUI convictions even though the vehicles were parked away from the travel lanes of a highway or in a parking lot. See, e.g., Williams, 216 Va. at 300, 217 S.E.2d at 896 (vehicle in parking lot); Gallagher, 205 Va. at 669, 139 S.E.2d at 40 (vehicle on shoulder); McConnell, 2005 WL 2417633, at *3-4 (vehicle in a parking space); Lawrence, 849 S.W.2d at 765 (vehicle parked to the side of a narrow gravel road); and State v. Bugger, 483 P.2d 442, 445 (Utah 1971) (vehicle on the shoulder of the road). While defendant's vehicle was parked in an overlook off of the Blue Ridge Parkway, it was immediately adjacent to the Parkway and rested where he had coasted to a stop after running out of gasoline. Under these circumstances, the fact that Stephenson's vehicle was located just off the Parkway, as opposed to being on the roadway itself, does not defeat application of the federal DUI regulation.

### C. Vehicle Inoperable – Out of Gasoline.

Finally, Stephenson contends that he could not be in actual physical control of his vehicle because his truck had run out of gasoline and, therefore, was inoperable. Finding a defendant guilty of a DUI when he is parked and the car is not running has been justified under the reasoning that "[t]he Defendant could have at any time started the engine and driven away." Lawrence, 849 S.W.2d at 765; see also Williams, 216 Va. at 300, 217 S.E.2d at 896 (the vehicle is "capable of being immediately placed in motion to become a menace to the public, and to its drunken operator"). Cases where the defendant was not capable of operating the vehicle easily and quickly have not been upheld as DUIs. See Stevenson, 243 Va. at 438, 416 S.E.2d at 438 (defendant asleep, vehicle turned off); Overbee v. Commonwealth, 227 Va. 238, 242, 315 S.E.2d 242, 244 (1984) (defendant was outside his vehicle and the engine was not running). If an

intoxicated person's vehicle was not capable of being operated, the argument is that he could not have actual physical control of his vehicle and, as such, poses no threat to the public.

"The courts generally have not dealt with the question whether the vehicle must be operable in order to establish actual physical control." James O. Pearson, Jr. Annotation, <u>What Constitutes Driving, Operating or Being in Control of Motor Vehicle for Purposes of Driving while Intoxicated Statute or Ordinance</u>, 93 A.L.R.3d 7 (1979). Nevertheless, in two opinions, the Virginia Supreme Court has touched on this issue.

In <u>Nicolls v. Commonwealth</u>, 212 Va. 257, 259, 184 S.E.2d 9, 11 (Va. 1971), the court found defendant guilty of operating his vehicle under the influence, despite evidence that his vehicle was inoperable. In <u>Nicolls</u>, defendant's car was found late at night in the middle of a highway with the motor running and the lights and heater on, with defendant slumped over the steering wheel. At trial, defendant's mechanic testified that "(t)he clutch and transmission was lacking fluid, and it was running hot, and the transmission stopped." 212 Va. at 258, 184, S.E.2d at 10. Because the car would not move due to transmission failure, defendant argued that he could not be convicted of operating an inoperable vehicle.

The Virginia Supreme Court affirmed Nicolls' DUI conviction, rejecting his argument and reasoning that the Virginia Code defined motor vehicle to include vehicles which both are self-propelled and those which are designed to be self propelled. Such a result, of course, is entirely appropriate under the facts of that case, where the driver was slumped over the wheel of his car stopped in the middle of the roadway with the engine running. Nicolls, unlike the defendant here, made no argument that he consumed alcohol only after his car ran dry of transmission fluid and came to rest. Rather, the Nicolls conceded that when the Virginia State

11

Trooper approached his vehicle - in the road with the motor running -- he was in a drunken condition.

In Gallagher, 205 Va. at 667, 139 S.E.2d at 38, the defendant also was convicted of operating a vehicle while under the influence, again notwithstanding the fact his vehicle was incapable of moving. When the arresting officer came upon the defendant, he was in the driver's seat revving the motor in an attempt to free the car from a ditch in front of his house. Because one wheel was off the ground and spun freely, the car would not move. At trial, the defendant's wife testified that she was backing the car out of her driveway and ran up on a median strip and that her intoxicated husband had merely gotten behind the wheel to help her try to free it. The court found the defendant's conduct constituted operation of the vehicle, even though the vehicle could not physically move, because the word "operate" in the statute "includes the acts of the defendant in this case in operating the mechanism of his automobile," id. at 670, 139 S.E.2d at 40, which he was plainly doing by revving the motor.

In both Nicolls and Gallagher, the motor was running when the defendants were discovered behind the wheel of their vehicles. Given that the defendant in Nicolls was on the roadway alone and admittedly in a drunken condition when the officer roused him, a reasonable inference could be drawn that he was driving while intoxicated prior to the transmission failure. 212 Va. at 259, 184 S.E.2d at 11. In Gallagher, the intoxicated defendant was actively revving the motor to free his car from a ditch where it was temporarily immobile. 205 Va. at 667, 139 S.E.2d at 38. More to the point, however, each of these cases are distinguishable because in neither case did the driver claim, as here, that the alcohol was consumed only after the vehicle had become inoperable.

In State v. Adams, 127 P.3d 208, 210 (Idaho Ct. App. 2005), the court noted "driving under the influence (DUI) statutes are designed to prevent risk to the public from persons operating or controlling motor vehicles and that such risk did not exist where the vehicle was inoperable." However, the court noted that actual physical control may remain when the vehicle is capable of "readily being made operable, or of being put into motion as by coasting." Id. at 211. In State v. Smelter, 674 P.2d 690, 693 (Wash. Ct. App. 1984), the court held, "the 'reasonably capable of being rendered operable' standard employed by the trial court here distinguishes a car that runs out of gas on a major freeway near several exits and gas stations from a car with a cracked block which renders it 'totally inoperable.'" In Smelter, the defendant was convicted of a DUI after he was found intoxicated behind the wheel of his vehicle, which was stopped on the shoulder of the highway, but with its engine off and out of gas. Id. at 693. The court noted:

> The focus should not be narrowly upon the mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move. Where, as here, circumstantial evidence permits a legitimate inference that the car was where it was and was performing as it was because of the defendant's choice, it follows that the defendant was in actual physical control.

Id. Smelter is distinguishable, however, as it involved running out of gasoline on a freeway near several exists and gas stations, as opposed to the relative isolation of the Blue Ridge Parkway. Indeed, Stephenson's actions, asking for help from a passing motorist, engaging his emergency flashers and waiting for assistance, are inconsistent with any threat posed by his operation of his vehicle. Additionally, as with Nicolls and Gallagher, the defendant in Smelter admitted that he drove his vehicle while intoxicated

13

until it ran out of gas. Id. Stephenson never made such an admission; rather he contends that he did not consume any alcohol until after the vehicle became inoperable; and the government could not prove to the contrary.

Stephenson's vehicle was stranded -- out of fuel -- at an overlook on the Blue Ridge Parkway. As such, it was not "capable of being immediately placed in motion to become a menace to the public, and to its drunken operator," Williams, 216 Va. at 301, 217 S.E.2d at 896. Nor was it "poised to pose a danger to other motorists and pedestrians." Coleman, 750 F. Supp. at 194. Neither of the Virginia Supreme Court decisions involving inoperable vehicles, Nicolls or Gallagher, are on point as in each of those cases the engine was running. More importantly, neither of the defendants in Nicolls or Gallagher could claim, as Stephenson does here, that the alcohol was consumed only after his vehicle ran out of fuel. As such, the court cannot conclude that the government met its burden of proving beyond a reasonable doubt that Stephenson violated 36 C.F.R. § 4.23(a)(1), (2), being in actual physical control of a motor vehicle while under the influence of alcohol in a national park. Those charges will be dismissed.

## IV.

As to the charge of intoxication in a national park, 36 C.F.R. § 2.35(c), the evidence plainly establishes Stephenson's guilt. Given his level of intoxication, Stephenson was present in a park area to a degree that could endanger himself or others. See U.S. v. Hogue, 752 F.2d 1503, 1505 (9th Cir. 1985); U.S. v. Regan, 93 F.Supp.2d 82, 88-89 (D. Mass. 2000). The court finds Stephenson guilty of a violation of 36 C.F.R. § 2.35(c), and the case will be set down for sentencing.

14

The Clerk is directed to send certified copies of this Memorandum Opinion and to counsel of record. The case will be set down for sentencing on the violation of 36 C.F.R. § 2.35(c).

Enter this 17th day of August, 2007.

_____
United States Magistrate Judge